IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID FRANCO, | ) |
| | ) No. 2:26-cv-00453 |
| Plaintiff | ) |
| | ) Judge W. Scott Hardy |
| vs. | ) |
| | ) |
| WVU MEDICINE-UNIONTOWN | ) |
| HOSPITAL, | ) |
| | ) |
| Defendant | ) JURY TRIAL DEMANDED |

**BRIEF IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT**

Defendant, Uniontown Hospital (incorrectly identified as "WVU Medicine-Uniontown Hospital), by and through its counsel Burns White LLC, hereby files it Brief in Support of its Motion to Dismiss and in support thereof avers as follows:

## I.   **INTRODUCTION**

Plaintiff, David Franco (hereinafter referred to as, "Plaintiff"), brings federal law claims against Defendant, WVU Medicine-Uniontown Hospital (hereinafter referred to as, "Defendant") arising under the Emergency Medical Treatment and Active Labor Act ("EMTALA") and for civil rights violations, as well as state law claims for negligence, gross negligence/reckless indifference, and reckless infliction of emotional distress. *See* ECF 1-1. Plaintiff seeks both compensatory and punitive damages against Defendant. *See* ECF 1-1, ¶¶ IX, B-C.

However, for the reasons stated herein, Plaintiff's EMTALA and civil rights claims should be dismissed against Defendant for failure to state a claim. In doing so, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims. Plaintiff's request for punitive damages and his claim of reckless infliction of emotional distress should also be dismissed

against Defendant for the reasons stated herein. Finally, Plaintiff's allegations requesting specific dollar amounts should be stricken from the Complaint.

## II.    PROCEDURAL HISTORY/FACTUAL ALLEGATIONS

Plaintiff initiated the present lawsuit by filing a Motion for Leave to Proceed in forma pauperis on March 19, 2026. *See* ECF 1. Attached to this motion was Plaintiff's Complaint. *See* ECF 1-1. On March 23, 2026, Plaintiff's Motion was granted and Plaintiff's Complaint against Defendant was filed. *See* ECF 2-3.

Plaintiff's Complaint avers that, on or about April 9, 2024, Plaintiff spilled an entire bottle of Gentian Violet on his lap, causing "severe burning pain, irritation of sensitive tissue, chemical burns, extreme dryness and cracking causing bleeding of skin, and substantial impairment of Plaintiff's ability to walk or move normally." ECF 1-1, ¶¶ 11-13.

As a result of this spill, Plaintiff presented to Defendant's emergency department. ECF 1-1, ¶ 14. Plaintiff alleges that Defendant's emergency department staff "instructed Plaintiff to attempt self-cleaning of the chemical exposure using a bucket of water and a sponge." ECF 1-1, ¶ 20. Plaintiff also alleges that he was offered over-the-counter pain medication. ECF 1-1, ¶ 29. Plaintiff states that no imaging or diagnostic scans were performed and that he was evaluated by a physician assistant rather than a "licensed physician." ECF 1-1, ¶¶ 18-19. Additionally, Plaintiff's Complaint alleges that Defendant's staff purportedly made statements that "they did not want to physically touch Plaintiff's genital area." ECF 1-1, ¶ 23.

Subsequently, Plaintiff alleges that he was discharged while still in "severe indescribale [sic] pain" without "safe discharge planning, meaningful follow-up care instructions, or transportation assistance." ECF, 1-1, ¶¶ 30 & 32.

### III.    <u>LEGAL STANDARD</u>

**A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1).**

Federal district courts are courts of limited subject matter jurisdiction. *Deluxe Building Systems, Inc. v. Constructamax, Inc.*, 94 F.Supp.3d 601, 607 (D. N.J. 2013). A defendant may move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). To have original jurisdiction, the federal district court must have either federal question jurisdiction or diversity jurisdiction. *See* 28 U.S.C. §§ 1331-1332. Relevantly, federal question jurisdiction applies to "civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at § 1331.

Under Section 1367, district courts have supplemental jurisdiction over state law claims that "form part of the same case of controversy" as claims within the court's original jurisdiction. *Id.* at § 1367(a). However, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3). Furthermore, the United States Court of Appeals for the Third Circuit has explained where the District Court "dismisses the federal claims prior to trial or at the early stages of the litigation, it '*must* decline' to exercise jurisdiction over the state law claims 'unless considerations of judicial economy, convenience, and fairness' justify retaining that jurisdiction." *Talley v. Clark*, 111 F.4th 255, 266 n. 6 (3d Cir. 2024) (*quoting Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)).

The Third Circuit has found in multiple cases that District Courts have properly declined to exercise supplemental jurisdiction over state law claims after all federal law claims have been appropriately dismissed. *See e.g.*, *Leisure v. Lancaster Cnty. Prison*, 750 Fed.Appx. 89, 92 (3d Cir. 2018) (affirming district court's decision to decline supplemental jurisdiction on plaintiff's medical negligence claim where it properly dismissed plaintiff's federal deliberate indifference

claim); *Montgomery v. Aparatis Distribution Co.*, 607 Fed.Appx. 184, 188 (3d Cir. 2015) (affirming district court's ability to decline exercising supplemental jurisdiction over state law negligence claim where it "properly dismissed all claims falling within its original jurisdiction"); *Wheeler v. Ulisny*, 482 Fed.Appx. 665, 669 (3d Cir. 2012) (finding district court did not abuse its discretion by declining to decide state law claims after the claims which provided original jurisdiction were dismissed and appropriately remanded the remaining claims to state court).

Here, Plaintiff alleges original federal question jurisdiction because his claims purportedly arise under EMTALA (42 U.S.C. § 1395dd) and federal civil rights statutes included Section 1557 of the Affordable Care Act ("ACA;" 42 U.S.C. § 18116). However, for the reasons explained more fully below, Plaintiff fails to state a claim under EMTALA and under civil rights statutes including the ACA, and as such these claims should be dismissed with prejudice. In dismissing these claims, Plaintiff's only remaining claims are state law claims, which the Court must decline to exercise supplemental jurisdiction over as the present case is at the early stage of litigation and there are no justification to retain jurisdiction. *See Talley*, 111 F.4th at 266 n. 6.

Therefore, the Court should dismiss the case for lack of subject matter jurisdiction.

**B. Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6).**

### 1. *Applicable Standard and Failure to State a Claim*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the Court must "accept all factual allegations as true, construed in the light most favorable to the Plaintiff, and determine whether, under any reasonable reading of the Complaint, the Plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While a Complaint need only

contain "a short and plain statement of the claim," and detailed factual allegations are not required, a Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations must suffice "to raise a right to relief above the speculative level." Id. at 555.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a Court  is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 pp. 235-36 (3d ed. 2004)). Although a court must accept as true all the well-pleaded factual allegations, the same requirement does not apply to legal conclusions – the pleadings must include factual allegations to support the legal claims asserted. *Iqbal*, 556 U.S. at 684; *see also Santiago v. Warminster Tp.*, 629 F.3d 121, 128 (3d Cir. 2010).

Therefore, in considering a motion to dismiss under Rule 12(b)(6), the Court must first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. Then, the Court must determine whether the alleged facts make out a plausible claim for relief. *Fowler*, 578 F.3d at 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). All well-pleaded allegations in the Complaint must be accepted as true and interpreted in the light most favorable to the Plaintiffs, and all inferences must be drawn in the Plaintiffs' favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

**2. Plaintiff's EMTALA claim should be dismissed because the facts pleaded are outside the scope of EMTALA and are instead sounded in state medical malpractice law.**

The Emergency Medical Treatment and Active Labor Act ("EMTALA") requires hospital emergency departments (1) to screen patients for an emergency medical condition; and (2) once an emergency condition is found, to stabilize the patient before transferring or discharging him. *Grages for Est. of Donovan v. Geisinger Health*, No. 4:19-CV-01141, 2021 WL 880475, at *3 (M.D. Pa. Mar. 9, 2021) (*quoting Baker v. Adventist Health, Inc.*, 260 F.3d 987, 992 (9th Cir. 2001)). EMTALA further provides for a private cause of action to individuals who suffer personal harms as a result of a violation of either of these duties. 42 U.S.C. § 1395dd(d)(2)(A); *see also McClure v. Parvis*, 294 F.Supp.3d 318, 323 (E.D. Pa. 2018).

However, "EMTALA does not generally provide a vehicle for claims that are at their core malpractice in nature." *Grages for Est. of Donovan*, 2021 WL 880475, at *5 (*quoting Williams v. Dimensions Health Corp.*, 952 F.3d 531, 538 (4th Cir. 2020)); *see also Dicioccio v. Chung*, 232 F.Supp.3d 681, 686 (E.D. Pa. 2017) ("EMTALA 'does not create a federal cause of action for malpractice'"). Instead, recovery in these instances must be pursued under state medical malpractice laws. *See Williams*, 952 F.3d at 538. Here, Plaintiff has failed to sufficiently plead that Defendant failed to either appropriately screen or stabilize him prior to discharge. Instead, Plaintiff's claims sound in state malpractice law, and as such, the EMTALA claim should be dismissed.

First, EMTALA's screening obligation requires an emergency department to "provide for an appropriate medical screening examination within the capability of the hospital's emergency department…to determine whether or not an emergency medical condition…exists." 42 U.S.C. § 1395dd(a). "Thus, to state an EMTALA failure-to-screen claim, the plaintiff must allege that: (1)

the patient had an emergency medical condition; and (2) the hospital did not screen the patient in the same way it screens other patients presenting with similar symptoms." *McClure*, 294 F.Supp.3d at 324. Additionally, a failure to screen or a delay in screening may be actionable, however, an inappropriate or faulty screening is not. *Id*.

Here, Plaintiff conclusory alleges that "Defendant failed to provide an appropriate medical screening examination consistent with *standard* emergency department procedures." *See* ECF 1-1, ¶ 17 (*emphasis added*). However, Plaintiff does not allege that Defendant's medical screening examination was inconsistent with its own policies and procedures. Accordingly, Plaintiff's claim at most is a claim of inappropriate or faulty screening, which is not actionable under EMTALA. *See McClure*, 294 F.Supp.3d at 324. Furthermore, Plaintiff alleges, *inter alia*, that "[n]o imaging or diagnostic scans were performed" and that "Plaintiff was evaluated solely by a physician assistant (PA); no licensed physician personally examined or treated Plaintiff." *See* ECF 1-1, ¶¶ 18-19. These allegations do not, however, support a claim under EMTALA, because Plaintiff does not allege that patients with similar symptoms receive such testing or evaluation by a licensed physician.

Second, a "stabilization" claim requires that a plaintiff (1) had an emergency medical condition; (2) the hospital actually knew of that condition; and (3) the patient was not stabilized before being transferred or discharged. *Torretti v. Main Line Hosps., Inc.*, 580 F.3d 168, 177 (3d Cir. 2009). For purposes of EMTALA, a person is "stabilized" if "no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility." 42 U.S.C. § 1395dd(e)(3). In addition, the stabilization requirement is "triggered only after a hospital determined that [an] individual has an emergency medical condition." *Byrne v. Cleveland Clinic*, 684 F.Supp.2d 641, 655 (E.D. Pa. 2010) (*quoting*

*Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1040 (D.C. Cir. 1991)) (internal quotations omitted).

Here, Plaintiff does not and cannot allege that Defendant determined he was experiencing an emergency medical condition. Accordingly, Defendant did not have a duty to stabilize Plaintiff's medical condition prior to discharging him. Even assuming such a duty existed, Plaintiff fails to state a stabilization claim under EMTALA. In particular, Plaintiff's Complaint is devoid of any factual and legal allegations that he was not stable at the time of discharge.

In sum, Plaintiff has failed to sufficiently allege either a failure to screen or failure to stabilize claim under EMTALA. Rather, Plaintiff's claims are premised on a disagreement between the alleged care provided and the purported appropriate level of care required. Plaintiff's claims are thus sounded in malpractice law, such that state law provides an adequate avenue for recovery.

Therefore, Plaintiff's EMTALA claim should be dismissed with prejudice for failure to state a claim, because Plaintiff's claims can adequately be addressed through state malpractice law.

### 3. Plaintiff has failed to state a claim for "Count II – Civil Rights/Sex Discrimination."

i. <u>To the extent Plaintiff's asserts a civil rights violation under Section 1983, Plaintiff's claim fails because Defendant is not a state actor.</u>

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). To be acting under color of state law, it is required that the defendant has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority

of state law.'" *Id.* at 49 (*quoting United States v. Classic*, 313 U.S. 299, 326 (1941)). This element is a threshold issues and "there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

In determining whether a private entity is a state actor, the primary inquiry is "whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotation marks and citation omitted). Thus, a private entity may be considered a state actor for purposes of Section 1983 if (1) the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) the private entity has acted with the help of or in concert with state officials; or (3) the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks and citation omitted).

Here, Plaintiff's Complaint provides no factual or legal basis to conclude that Defendant is a state actor. Moreover, Plaintiff does not and cannot allege that Defendant qualifies as a state actor for purposes of Section 1983 under any of the above tests. *See e.g.*, *Payha v. Excela Health*, No. CV 18-358, 2018 WL 3618703, at *4 (W.D. Pa. July 30, 2018) (explaining that "a defendant's receipt of state funding is not a sufficient basis on which to conclude that the defendant was a state actor").

Therefore, because Defendant is not a state actor, Plaintiff's civil right cause of action should be dismissed with prejudice to the extent the action is based on Section 1983.

ii.    Further, to the extent Plaintiff's claim is based on Defendant's alleged violations of the Affordable Care Act ("ACA"), Plaintiff fails to adequately allege sex discrimination.

Section 1557 of the ACA provides that "an individual shall not…be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance" as protected by, *inter alia*, Title IX of the Education Amendments of 1972. 42 U.S.C. § 18116(a). Title IX of the Education Amendments of 1972 prohibits intentional discrimination on the basis of sex. 20 U.S.C. § 1681(a); *see also Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 173 (2005) ("Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination"); *Doe v. Independence Blue Cross*, 703 F.Supp.3d 540, 547 (E.D. Pa. 2023). Under Title IX, the plaintiff must allege (1) he was excluded from participation in or denied benefits of or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion was on the basis of sex, i.e., gender. *Bougher v. Univ. of Pittsburgh*, 713 F.Supp. 139, 143-44 (W.D. Pa. 1989).

Here, Plaintiff has failed to prove that Defendant intentionally discriminated against him on the basis of sex. Specifically, although Plaintiff alleges that Defendant's agents "commented that they did not want to physically touch Plaintiff's genital area" and that he "reasonably interpreted" these statements and the purportedly denial of treatment as gender-based discrimination, Plaintiff does not and cannot allege that Defendant's staff intentionally made these comments and refused treatment on the basis of sex. *See* ECF 1-1, ¶ 23. For example, Plaintiff's Complaint is devoid of any facts that Defendant's agents made statements that they did not want to provide treatment because Plaintiff was male and/or that Defendant has provided similar treatment to female patients.

Therefore, Plaintiff's civil rights action should be dismissed with prejudice to the extent it is based on the ACA for failure to state a claim.

### 4. *The facts pleaded do not rise to the level to support an award of punitive damages.*

Under Pennsylvania law, "punitive damages are an 'extreme remedy' available in only the most exceptional matters." *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005). Specifically, "punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005).

In medical malpractice actions, the Medical Care Availability and Reduction of Error ("MCARE") Act sets forth the standard with regard to allegations of punitive damages. *See* 40 P.S. § 1303.505. In particular, "[p]unitive damages may be awarded for conduct that is the result of the health care provider's willful and wanton conduct or reckless indifference to the rights of others." *Id.* at § 1303.505(a). In contrast, a showing of mere negligence or even gross negligence is not sufficient to support an award of punitive damages. *Id.* at § 1303.505(b).

Regarding vicarious liability causes of actions, the MCARE Act further provides:

> Punitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injury unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages.

*Id.* at § 1303.505(c).

Here, Plaintiff seeks punitive damages for "Count IV – Gross Negligence / Reckless Indifference." *See* ECF 1-1, ¶ 66. However, under the facts pleaded, Plaintiff is not entitled to punitive damages. Defendant's purported gross negligence does not justify an award of punitive

damages. *See* 40 P.S. § 1303.505(b). Plaintiff has also failed to allege any facts to support a finding that Defendant knew of and allowed its agents to act with "willful and wanton conduct or reckless indifference" to Plaintiff's rights. *See* 40 P.S. § 1303.505(a),(c). Rather, Plaintiff's sole justification for punitive damages is that Defendant's agents refused to provide appropriate treatment and quickly discharged him. *See* ECF 1-1, ¶ 65.

Therefore, Plaintiff's demand for punitive damages should be dismissed with prejudice, because Plaintiff is unable to state a *prima facie* case for punitive damages against Defendant.

5. ***"Count V – Reckless Indifference of Emotional Distress" of Plaintiff's Complaint should be dismissed for the reason that it is duplicative of "Count III – Negligence (Institutional/Hospital)" and "Count IV – Gross Negligence/Reckless Indifference."***

Under Pennsylvania law, a *prima facie* case for intentional infliction of emotional distress ("IIED") requires the plaintiff to show: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. *Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 775 (Pa. Super. 2022).

In comparison, a hospital may be liable under the doctrine of corporate negligence or corporate liability "if it fails to uphold the proper standard of care owed to its patient." *Thompson v. Nason Hosp.*, 591 A.2d 703, 708 (Pa. 1991). This standard of care includes "a duty to oversee all persons who practice medicine within its walls as to patient care" and "a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients." *Id.* at 707. A corporate negligence claim further requires: (1) the hospital to have actual or constructive knowledge of the defect or procedures which created the harm; and (2) that the hospital's negligence was a substantial factor in bring about the harm to the injured plaintiff. *Id.* at 708. Additionally, regarding "Count IV – Gross Negligence/Reckless Indifference," a plaintiff must

demonstrate a "health care provider's willful and wanton conduct or reckless indifference to the rights of others" to recover punitive damages. 40 P.S. § 1303.505(a).

Here, Plaintiff's reckless infliction of emotional distress claim is duplicative of his negligence and gross negligence/reckless indifference claims. Specifically, both the negligence claim and the reckless infliction of emotional distress claim are based on Defendant's alleged conduct in failing to provide reasonable medical care. *Compare* ECF 1-1, ¶¶ 61-62 *with* ECF 1-1, ¶ 69. Similarly, both the reckless indifference claim and the reckless infliction of emotional distress claims allege that Defendant acted recklessly by refusing to treat Plaintiff and discharging him quickly. *Compare* ECF 1-1, ¶ 65 *with* ECF 1-1, ¶ 69. In sum, Plaintiff's reckless infliction of emotional distress claim is duplicative of his negligence and gross negligence/reckless indifference claims, because the claims are based on the same alleged conduct.

Therefore, "Count V – Reckless Indifference of Emotional Distress" should be dismissed with prejudice as duplicative of Counts III and IV.

### C. Motion to Strike Specific Damage Amounts pursuant to Fed. R. Civ. P. 12(f) and W.D. Pa. LCvR 8.

The allegations contained in Plaintiff's Complaint claiming a specific amount of compensatory and punitive damages should be stricken from the Complaint pursuant to Federal Rule of Civil Procedure 12(f) for the reason that said allegations violation Rule 8 of the Western District of Pennsylvania Local Civil Rules of Court (hereinafter "Local Rule 8").

Local Rule 8 provides that "[n]o party shall set forth in a pleading originally filed with this Court a specific dollar amount of unliquidated damages in a pleading." W.D. Pa. LCvR 8. Only in limited situations when a rule, statute, or regulation requires a specific amount in controversy may a specific dollar amount be pled. *Id.*

Under Federal Rule of Civil Procedure 12(f), a court may strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also Massey v. Holman*, No. 1:17-CV-292, 2019 WL 3997845, at *7-8 (W.D. Pa. July 23, 2019) *report and recommendation adopted*, No. CV 17-292, 2019 WL 3997280 (W.D. Pa. Aug. 23, 2019) (motion to strike specific dollar amounts for compensatory and punitive damages granted); *Scutella v. Erie Cnty. Prison*, No. 1:19-CV-245, 2020 WL 4904587, at *6 (W.D. Pa. Aug. 20, 2020) (same).

Here, Plaintiff seeks punitive damages in the amount of $1,000,000 and compensatory damages in the amount of $1,000,000. However, there is no rule, statute, or regulation requiring Plaintiff to plead a specific dollar amount. For example, Plaintiff is not alleging diversity jurisdiction and neither EMTALA nor ACA requires Plaintiff to plead a specific dollar amount.

Therefore, allegations containing a specific amount of damages should be stricken from Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(f) as a violation of Local Rule 8.

## IV.    <u>RELIEF REQUESTED</u>

For the foregoing reasons, Defendant respectfully requests that its Motion to Dismiss and Motion to Strike pursuant to Fed. R. Civ. P. 12, be granted for the reasons set forth.

Respectfully submitted,

**Burns White, LLC**

By:*/s/ Alyssa M. Arbelli-Smith*
Daniel J. Margonari, Esquire
PA ID: 311809
Alyssa M. Arbelli-Smith, Esquire
PA ID: 337760
48 26th Street
Pittsburgh, PA  15222

(412) 995-3000
(412) 995-3300 [fax]
djmargonari@burnswhite.com
amarbelli-smith@burnswhite.com
*Attorneys for WVU Medicine-Uniontown*
*Hospital*